**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | No. 4:24-CR-543 (4) |
| | § | |
| BRADLEY RICKENBACKER | § | |

**DEFENDANT'S REPLY TO THE**
**SUR-REPLY TO THE GOVERNMENT'S RESPONSE (ECF 413)**

TO THE HONORABLE KEITH ELLISON:

Bradley Rickenbacker submits this reply to address three arguments the Government advances in its Response to Defendant's Reply (ECF 413): that Mr. Rickenbacker impermissibly asserts the Fourth Amendment rights of others; that his suppression request is insufficiently specific; and that his request for grand jury materials should be denied. These arguments misunderstand Mr. Rickenbacker's motion.

## I.  MR. RICKENBACKER ASSERTS HIS OWN RIGHTS, NOT THOSE OF OTHERS

The Government's argument attacks a claim Mr. Rickenbacker does not make. He does not seek to vindicate the privacy of Darvi Hinojosa, John Pfeffer, or any other person captured by the tower dump or the Flock network. His claim is that the Government seized and exploited his *own* location data: his cell site location information in the Bimboz tower dump, the acquisition of which the Government concedes was a Fourth Amendment search, and the record of his own movements compiled through the Flock network. The personal rights rule the Government invokes, *Plumhoff v. Rickard*, 572 U.S. 765, 778 (2014), and its ancestors, *Rakas v. Illinois*, 439 U.S. 128 (1978), and *United States v. Payner*, 447 U.S.

727 (1980), bar a defendant from suppressing evidence obtained by searching *another* person's property in which the defendant had no privacy interest. They have no application where, as here, the challenged searches captured the defendant's own data.

The Government acknowledges that Mr. Rickenbacker may cite the other captures "to demonstrate the scope or capabilities of the ALPR system." ECF 413 at 1–2. That is precisely why they appear in the reply. Under *Carpenter*, the constitutional concern is a system's capacity for comprehensive, retrospective tracking; the breadth of the Flock network characterizes the intrusion on Mr. Rickenbacker's *own* movements and rebuts the Government's effort to shrink the search to "two photographs." Establishing that the Government queried a cross-jurisdictional database capable of aggregating a person's movements is not a vicarious assertion of anyone's rights; it is proof of the nature of the search of Rickenbacker. *Carpenter v. United States*, 585 U.S. 296, 311–12 (2018).

The indiscriminate breadth of these searches is relevant, but as a matter of merits and remedy, not standing. A warrant's sweep across thousands of uninvolved people is what makes it a general warrant "categorically prohibited by the Fourth Amendment," *United States v. Smith*, 110 F.4th 817, 838 (5th Cir. 2024), a defect Mr. Rickenbacker invokes because his own data was seized under it. And the exclusionary rule is a societal deterrent, aimed at police conduct "rather than a personal constitutional right of the party aggrieved," *United States v. Calandra*, 414 U.S. 338, 348 (1974); the deliberate, mass character of a dragnet bears directly on the deterrence calculus, *Herring v. United States*,

555 U.S. 135, 144 (2009). Neither doctrine requires Mr. Rickenbacker to assert another's rights.[1]

## II.  THE CHALLENGED EVIDENCE IS IDENTIFIED WITH THE REQUIRED SPECIFICITY

The Government next argues that the motion challenges only "two photographs" and is otherwise "insufficiently specific," citing the rule that a suppression motion must state a "definite, specific, detailed, and nonconjectural" basis for relief. ECF 413 at 2 (quoting *United States v. Smith*, 977 F.3d 431, 434 (5th Cir. 2020), and *United States v. Harrelson*, 705 F.2d 733, 737 (5th Cir. 1983)). The motion satisfies that standard. It identifies: (i) the Bimboz Bar cell tower dump warrant, No. 4:24-mc-5498, and all evidence derived from it; (ii) the warrantless Flock surveillance, including the December 1 and December 25, 2024 captures cited in paragraphs 59 and 73 of the February 18, 2025 Koncir Affidavit (Bates USA-133448, USA-133455); and (iii) the Flock-derived warrant for TARGET RESIDENCE #7, No. 4:25-mc-5377, and its fruits. The Government has had full notice of each category and has briefed them, so it has not been denied the opportunity to marshal "the quality or quantity of evidence" needed to respond. *See United States v. Chavez-Valencia*, 116 F.3d 127, 131–32 (5th Cir. 1997). To the extent the Government's Flock database queries captured additional images of Mr. Rickenbacker that it has not fully

---

[1]The personal rights rule should not be confused with the distinct doctrine of third party standing recognized in the jury selection context, under which a litigant may assert a third party's rights on a showing of injury, a close relationship, and a hindrance to the third party's own assertion of those rights. *See Powers v. Ohio*, 499 U.S. 400, 410–15 (1991); *Kowalski v. Tesmer*, 543 U.S. 125, 129–30 (2004). Mr. Rickenbacker does not rely on that doctrine, and need not, because he asserts his own Fourth Amendment interest.

disclosed, the specificity rule does not require him to catalog evidence the Government has withheld; it entitles him to an evidentiary hearing to determine the scope of the search.

### III.  THE GRAND JURY REQUEST IS NARROW AND TIED TO THE *FRANKS* AND FRUITS INQUIRY

Mr. Rickenbacker does not seek wholesale disclosure to challenge the sufficiency of the evidence before the grand jury, so *Williams* and *Calandra* are beside the point. *See United States v. Williams*, 504 U.S. 36, 54 (1992); *Calandra*, 414 U.S. at 351–52. His concern is narrower: whether the indictment was procured through the same unconstitutional tower dump and the *Franks* infected Flock warrants, which bears on a possible ground to dismiss under Rule 6(e)(3)(E)(ii) and on the scope of the fruits to be suppressed.

To satisfy the particularized need standard, Mr. Rickenbacker narrows his request to those grand jury materials that reference or rely upon the Bimboz tower dump, the Flock captures, or the October 2024 and February 2025 Koncir Affidavits, and he consents to *in camera* review in the first instance. So limited, the request is "structured to cover only material so needed." *United States v. Miramontez*, 995 F.2d 56, 59 (5th Cir. 1993); *accord Douglas Oil Co. v. Petrol Stops Nw.*, 441 U.S. 211, 224–25 (1979). *Shows Urquidi* is distinguishable: unlike the defendant there, Mr. Rickenbacker identifies the specific unlawfully obtained evidence he contends tainted the proceeding. *See United States v. Shows Urquidi*, 71 F.4th 357, 365–66 (5th Cir. 2023). In the alternative, Mr. Rickenbacker asks that the issue be preserved and revisited after the Court rules on suppression and after the Government's Jencks, *Brady*, and *Giglio* productions.

## IV. THE GOVERNMENT'S CLARIFICATION CONFIRMS THE DUMP'S CENTRALITY

Finally, the Government now concedes that Mr. Rickenbacker is "not clearly identifiable in surveillance footage at the back of the bar," where the assault and robbery occurred, and appears only "at the front of the bar getting on his motorcycle after the assault and robbery." ECF 413 at 2. That concession confirms what the reply argued. The evidence placing Mr. Rickenbacker at the assault, as distinct from merely departing afterward, derives from the challenged tower dump, not the video. It reinforces both his standing, because his own data was seized and used to place him at the scene, and the materiality of the suppression he seeks.

## CONCLUSION

For these reasons, and those stated in the motion and reply, the Court should suppress the challenged evidence or, in the alternative, set an evidentiary and *Franks* hearing, and should either order the narrowed grand jury disclosure described above or preserve that issue for resolution after its ruling on suppression.

Respectfully submitted,

/s/ Michael DeGeurin
Michael DeGeurin
Federal Bar No. 23288
Foreman DeGeurin & DeGeurin
300 Main St., 3rd Floor
Houston, Texas 77002
Telephone No. (713) 655-9000
Facsimile No. (713) 655-1812
Attorney for Bradley Rickenbacker

## CERTIFICATE OF SERVICE

On the day of filing, a true and correct copy of this filing was served on all counsel of record through the Court's CM/ECF system and emailed to the Assistant United States Attorney.

/s/ Michael DeGeurin
Michael DeGeurin