**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** Plaintiff, | |
| v. | **Case No.** 24-00543-14-CR-H-KPE |
| **JEREMY COX,** Defendant. | |

**PLEA AGREEMENT**

The United States of America, by and through Aaron F. Reitz, United States Attorney for the Southern District of Texas, and Byron H. Black and Kelly Zenon, Assistant United States Attorneys, and Grace Bowen and Molly Smith, Trial Attorneys for the Department of Justice, Violent Crime and Racketeering Section, and the defendant, Jeremy Cox ("Defendant"), and Defendant's counsel, pursuant to Rule 11(c)(1)(A) and 11(c)(1)(B) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

**Defendant's Agreement**

1. Defendant agrees to plead guilty to Count Two of the second superseding indictment and to persist with that plea of guilty through sentencing. Count Two charges Defendant with assault with a dangerous weapon and resulting in serious bodily injury in aid of racketeering activity, in violation of Title 18, United States Code, Sections 1959(a)(3) and 2.

2. Defendant, by entering this plea, agrees that he is waiving any right to have the facts that the law makes essential to the punishment either charged in the indictment, or proved to a jury or proven beyond a reasonable doubt.

**Punishment Range**

3. The *statutory* maximum penalty for each violation of Title 18, United States Code, Sections 1959(a)(3) and 2, is imprisonment of not more than 20 years and a fine of not more than $250,000. Additionally, Defendant may receive a term of supervised release after imprisonment of not more than three years. Defendant acknowledges and understands that if he should violate the conditions of any period of supervised release which may be imposed as part of his sentence, then Defendant may be imprisoned for not more than two years, without credit for time already served on the term of supervised release prior to such violation.

4. Defendant understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

**Mandatory Special Assessment**

5. Pursuant to Title 18, United States Code, Section 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of $100 per count of conviction. The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

**Immigration Consequences**

6. Defendant recognizes that pleading guilty may have consequences with respect to his immigration status. Defendant understands that if he is not a citizen of the United States, by pleading guilty he may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Defendant understands that if he is a naturalized United States citizen, pleading guilty may result in immigration consequences, such as denaturalization and potential deportation or removal from the United States. Defendant's attorney

has advised Defendant of the potential immigration consequences resulting from Defendant's plea of guilty, and Defendant affirms that he wants to plead guilty regardless of any immigration consequences that may result from the guilty plea and conviction.

**Waiver of Appeal, Collateral Review, and Statute of Limitations**

7. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal the conviction and sentence imposed. Defendant is also aware that Title 28, United States Code, Section 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the judgment of conviction and sentence has become final. Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence, except that Defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under Title 28, United States Code, Section 2255. In the event Defendant files a notice of appeal following the imposition of the sentence or later collaterally attacks his conviction or sentence, the United States will assert its rights under this agreement and seek specific performance of these waivers.

8. Defendant also agrees that should the conviction following the Defendant's plea of guilty pursuant to this Agreement be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this agreement (including any counts that the United States has agreed to dismiss at sentencing pursuant to this Agreement) may be commenced or reinstated against the Defendant, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement or reinstatement of such prosecution. It is the intent of this Agreement to waive

all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date that this Agreement is signed.

9. In agreeing to these waivers, Defendant is aware that a sentence has not yet been determined by the Court. Defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he may have received from his counsel, the United States or the Probation Office, is a prediction and not a promise, did not induce his guilty plea, and is not binding on the United States, the Probation Office or the Court. The United States does not make any promise or representation concerning what sentence the defendant will receive. Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court. *See United States v. Booker*, 543 U.S. 220 (2005). Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

10. Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this plea agreement.

**The United States' Agreements**

11. The United States agrees to each of the following:

(a) If Defendant pleads guilty to Count Two of the second superseding indictment and persists in that plea through sentencing, and if the Court accepts this plea agreement, the United States will move to dismiss the first superseding indictment and Count Three at the time of sentencing. The defendant agrees that with respect to any and all dismissed charges he is not a 'prevailing party within the meaning of the 'Hyde Amendment,' Section 617, P.L. 105-119 (Nov. 26, 1997), and will not file any claim under that law;

(b) The Government will recommend a sentence at the bottom of the

applicable Guidelines range as determined by the Court at the time of sentencing; and

(c) If the Court determines that Defendant qualifies for an adjustment under U.S.S.G. § 3E1.1(a), and the offense level prior to operation of § 3E1.1(a) is 16 or greater, the United States will move under § 3E1.1(b) for an additional one-level reduction because Defendant timely notified authorities of his or her intent to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources more efficiently.

**Agreement Binding—Southern District of Texas and the Violent Crime and Racketeering Section of the Department of Justice Only**

12. The United States Attorney's Office for the Southern District of Texas agrees that it will not further criminally prosecute Defendant in the Southern District of Texas for the specific conduct described in the second superseding indictment. This plea agreement binds only the United States Attorney's Office for the Southern District of Texas, the Violent Crime and Racketeering Section of the Department of Justice, and Defendant. It does not bind any other United States Attorney's Office. The United States Attorney's Office for the Southern District of Texas will bring this plea agreement and the full extent of Defendant's cooperation to the attention of other prosecuting offices, if requested.

**United States' Non-Waiver of Appeal**

13. The United States reserves the right to carry out its responsibilities under guidelines sentencing. Specifically, the United States reserves the right:

(a) to bring the facts of this case, including evidence in the files of the United States Attorney's Office for the Southern District of Texas or the files of any investigative agency, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b) to set forth or dispute sentencing factors or facts material to sentencing;

(c) to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

(d) to file a pleading relating to these issues, in accordance with section 6A1.2 of the United States Sentencing Guidelines and Title 18, United States Code, Section 3553(a); and

(e) to appeal the sentence imposed or the manner in which it was determined.

**Sentence Determination**

14. Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, United States Code, Section 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense(s) to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees that the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute, or should the Court order any or all of the sentences imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea agreement.

**Rights at Trial**

15. Defendant understands that by entering into this agreement, he surrenders certain rights as provided in this plea agreement. Defendant understands that the rights of a defendant include the following:

(a) If Defendant persisted in a plea of not guilty to the charges, defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting

without a jury if Defendant, the United States, and the court all agree.

(b) At a trial, the United States would be required to present witnesses and other evidence against Defendant. Defendant would have the opportunity to confront those witnesses and his attorney would be allowed to cross-examine them. In turn, Defendant could, but would not be required to, present witnesses and other evidence on his own behalf. If the witnesses for Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the court; and

(c) At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if Defendant desired to do so, he could testify on his own behalf.

**Factual Basis for Guilty Plea**

16. Defendant is pleading guilty because he is in fact guilty of the charge contained in Count Two of the superseding indictment. If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt. The following facts, among others would be offered to establish Defendant's guilt:

*The Bandidos Outlaw Motorcycle Gang Enterprise*

The Bandidos outlaw motorcycle group ("Bandidos OMG") is comprised of individual chapters located in various regions and cities in Texas as well as other states and countries. The Bandidos OMG identifies itself as an outlaw motorcycle group through the public display of the "1%" diamond symbol. This symbol signifies that members of the organization have chosen to defy legal conventionality.

The Bandidos OMG is a paramilitary organization that has an established hierarchy and chain of command. Members of the Bandidos can achieve various ranks, to include at the individual Chapter Level: Sergeant at Arms, Secretary/Treasurer, Road Captain, Vice President, and President. Ranks at the National Level include: Sergeant at Arms, Nomads, Secretary/Treasurer, Vice President, and President. Orders are passed down from the National Level to the Chapter Level and are enforced without question. The Bandidos have penalties, some violent, against their own membership and leadership for failing to comply with rules and orders.

The Bandidos have established by-laws that dictate the formation of chapters, the regularity of mandatory meetings, mandatory dues that each member must pay to their

chapters and the National Level, mandatory attendance on "runs," the type of motorcycles members can have, as well as "do's" and "don'ts" of the organization.

The Bandidos have engaged in numerous criminal activities that serve to benefit the organization as a whole and its members to include robbery, assault, aggravated assault with firearms, knives and blunt objects, and murder. Many of these assaults and aggravated assaults are inflicted on rival OMG members to claim and control "turf" and establish dominance in a territory.

The Bandidos have common purposes, which include committing crimes of violence to promote and enhance the reputation of the enterprise and to keep victims in fear of it; enriching leaders, members, and associates through trafficking controlled substances and firearms; and providing financial support to gang members who are charged with or incarcerated for gang-related activities.

The Bandidos engage in and affect interstate commerce through its activities, including the commission of violence in numerous states against rival OMGs to control "turf" and establish dominance of a territory and/or retaliate against rivals for perceived disrespect and in the commission of said violence using firearms that have traveled via interstate commerce, and the mandating of dues from all members to be paid in U.S. currency that is sent via interstate commerce to the National Secretary/Treasurer to use as ordered by the National Leadership for, among other things, events/runs, equipment, and financial support to members who are charged with or incarcerated for gang-related activities.

The Bandidos also have "support clubs" which operate under their own names but are associated with and follow orders from the Bandidos. Support clubs wear the same colors, red and gold, as the Bandidos to show their support of the larger Bandidos chapter. They support the bandidos by helping at runs/events, carrying out orders for the Bandidos, and offering additional protection and support to Bandido members.

Defendant was a member of the Mascareros Motorcycle Club, which is a support club for the Bandidos.

*September 26, 2020: Assaults and Murder*

On September 26, 2020, Ronnie McCabe (a.k.a "Meathead") was at the Hawg Stop Bar and Grill located at 11335 Sheldon Road, Houston, Texas, located in the Southern District of Texas. At the bar, McCabe observed that there were members of rival OMG Brothers East ("B*EAST") present at the Hawg Stop. At that time, the Bandidos considered themselves in a state of "war" against B*EAST. McCabe contacted Bandido members, via phone, and told them that B*EAST members were at the Hawg Stop. As a result, a number of Bandidos and Mascareros responded to the Hawg Stop.

Arvin Bartlett (a.k.a. "Texas Josh") and Marky Baker (a.k.a. "Guero") subsequently arrived at the Hawg Stop. Baker talked with the B*EAST members and reported that everything was fine but instructed everyone to stay at the Hawg Stop. Eventually John Pfeffer (a.k.a.

"Big John") also arrived. Pfeffer walked over to the B*EAST members and asked B*EAST member A.B. to go off to the side for a conversation.

As A.B. and Pfeffer were talking, Roy Gomez (a.k.a. "Repo"), Codey Krustchinsky, Defendant, Baker, McCabe, and other Bandidos began circling A.B. and Pfeffer. Marcel Lett and Bradley Rickenbacker (a.k.a. "Dolla Bill") then walked towards the other B*EAST members present. After a brief conversation, Pfeffer initiated a fight by swinging at A.B. Once Pfeffer attacked A.B., McCabe ran inside the bar towards B*EAST member D.T., and Defendant charged in towards A.B. and Pfeffer.

B*EAST member R.C. charged toward the Bandidos but the large group of Bandidos, including Baker, Gomez, and Bartlett, joined the fight. Krustchinsky charged R.C. and separated him from A.B. McCabe came back outside and began assaulting R.C. with Krustchinsky. Lett and Rickenbacker then charged in, with Rickenbacker joining the assault on R.C. and Lett joining the assault on A.B. Krustchinsky, Rickenbacker, and McCabe assaulted R.C. and prevented R.C. from going to A.B.'s aid. During the assault of R.C., Rickenbacker ripped R.C.'s B*EAST shirt from his body.

Meanwhile, A.B. was on the ground and Defendant, Pfeffer, Baker, Gomez, Lett, and Bartlett were all striking and kicking A.B. The Bandidos also attempted to rob A.B. of his cut during the assault. Gomez then fired downwards at A.B. on the ground, striking and killing A.B. At least one other Bandido fired shots at A.B.

**Breach of Plea Agreement**

17. If Defendant should fail in any way to fulfill completely all of the obligations under this plea agreement or commit any new criminal offenses, the United States will be released from its obligations under the plea agreement, and Defendant's plea and sentence will stand. If at any time Defendant retains, conceals, or disposes of assets in violation of this plea agreement, including required financial information, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution. Any information and documents that have been disclosed by Defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against defendant in any prosecution.

**Monetary Penalties, Assets and Financial Disclosures**

18. Defendant understands and agrees that monetary penalties will be subject to immediate enforcement as provided in 18 U.S.C. § 3613 and that monetary penalties will be submitted to the Treasury Offset Program so that payments to the Defendant may be applied to federal debts.

19. Defendant understands that restitution, forfeiture, and fines are separate components of sentencing and are separate obligations. Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines. Subject to the provisions of paragraph seven above, Defendant waives the right to challenge in any manner, including by direct appeal or in a collateral proceeding, any restitution order, any forfeiture orders, and any fines.

**Restitution**

20. Defendant agrees to pay full restitution to the victim(s) regardless of the count(s) of conviction. Defendant agrees to pay full restitution as determined by the Court, regardless of the resulting loss amount, to all victims harmed by Defendant's "relevant conduct," as defined by U.S.S.G. §1B1.3, including conduct pertaining to any dismissed counts or uncharged conduct, and regardless of whether such conduct constitutes an "offense" under 18 U.S.C. §§ 2259, 3663 or 3663A. Defendant agrees that restitution imposed by the Court will be due and payable immediately and that should the Court impose a payment schedule, the payment schedule sets forth minimum payments and does not foreclose additional collection of restitution.

**Forfeiture**

21. As part of this plea agreement, Defendant agrees to the following:

(a) to forfeit, via either an administrative or judicial proceeding, all assets listed in the charging document (including any Supplemental Notice of

Forfeiture), and to forfeit or abandon any assets seized during this investigation or a related investigation;

(b) to withdraw any claims and petitions for such listed or seized assets, whether in this proceeding or another proceeding, and to waive notice of administrative proceedings (including forfeiture, destruction, and abandonment for seized property);

(c) that the Court will determine the proper amount of a money judgment;

(d) that one or more of the conditions set forth in 21 U.S.C. § 853(p) exists, so that the forfeiture money judgment may be immediately satisfied via forfeiture of substitute property; and

(e) to the order of forfeiture becoming final as to Defendant immediately following this guilty plea or immediately following entry of the forfeiture order, whichever applies.

**Financial Statement**

22. Defendant agrees to truthfully complete under penalty of perjury, within thirty days of the execution of this Plea Agreement, a financial statement on a form provided by the United States Attorney's Office and to update the statement within seven days of any material change. Defendant also agrees to make full disclosure to the United States Probation Office of all current and anticipated assets in which Defendant has an interest both before sentencing and again before termination of supervised release or probation, with such disclosures to be shared with the United States Attorney's Office.

23. Defendant further agrees not to dispose or transfer any assets without the prior written permission of the United States and to authorize the release of all financial information requested by the United States, including, but not limited to, credit histories and tax returns. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's financial disclosure, including in a deposition or informal debtor exam, whether before or after sentencing.

**Complete Agreement**

24. This written plea agreement, consisting of 15 pages, including the attached addendum of Defendant and his attorney, constitutes the complete plea agreement between the United States, Defendant, and Defendant's counsel. Other than any written proffer and cooperation agreement(s) that may have been entered into between the United States and Defendant, this agreement supersedes any prior understandings, promises, agreements, or conditions between the United States and Defendant. No additional understandings, promises, agreements, or conditions have been entered into other than those set forth in this agreement, and none will be entered into unless in writing and signed by all parties. Defendant acknowledges that no threats have been made against him and that he is pleading guilty freely and voluntarily because he is guilty.

25. Any modification of this plea agreement must be in writing and signed by all parties.

Filed at Houston, Texas, on August 27, 2026.

Jeremy Cox
Defendant

Subscribed and sworn to before me on August 27, 2026.

NATHAN KYLE OCHSNER
UNITED STATES DISTRICT CLERK

By: ______________________
Deputy United States District Clerk

APPROVED:

Aaron F. Reitz
United States Attorney

By: ______________________
Byron H. Black
Assistant United States Attorney
Southern District of Texas
Molly Smith
Trial Attorney
Violent Crime and Racketeering Section

______________________
Mark W. Bennett
Attorney for Defendant

my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case. I have read and carefully reviewed every part of this plea agreement with my attorney. I understand this agreement and I voluntarily agree to its terms.

X
Jeremy Cox
Defendant

AUGUST 27 2026
Date

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** Plaintiff, | |
| v. | **Case No.** 24-00543-10-CR-H-KPE |
| **JEREMY COX,** Defendant. | |

**PLEA AGREEMENT—ADDENDUM**

I have fully explained to Defendant his rights with respect to the pending indictment/information. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory, and the court may sentence Defendant up to the maximum allowed by statute per count of conviction. I have also explained to Defendant that sentences on multiple counts may be imposed to run consecutively to one another or to any other sentence. Further, I have carefully reviewed every part of this plea agreement with Defendant. To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

[signature]
Mark W. Bennett
Attorney for Defendant

August 27, 2026
Date

I have consulted with my attorney and fully understand all my rights with respect to the indictment/information pending against me. My attorney has fully explained, and I understand, all