**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>Plaintiff,<br>v.<br>**DAVID VARGAS,**<br>Defendant. | **Case No.** 24-CR-00543-03-CR-H-KPE |

**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S NOTICE OF INTENT TO USE EXPERT WITNESS**

The United States of America respectfully opposes Defendant David Vargas' ("the Defendant" and "Vargas") Notice of Intent to Use Expert Testimony, ECF No. 454 (hereinafter the "Motion"). As detailed below, Vargas' Notice is insufficient and vague under the requirements of Fed. R. Crim. P. 16 (C). Therefore, the Government moves to exclude the proposed expert testimony or, alternatively, to strike the Notice and order the defense to provide a compliant disclosure forthwith.

RELEVANT BACKGROUND

The prosecution in this case arises from state and federal investigations of violence and drug distribution perpetrated by members and associates of the Bandidos Outlaw Motorcycle Gang. In 2019 a turf war began between the Bandidos and the Brother's East Motorcycle Gang ("B*EAST"). As a result of the turf war, violence increased between the two groups.

Specifically, on November 2, 2021, M.Z., a member of B*EAST was shot and killed on the Interstate 10 feeder road near the Blue Bayou Café at 12008 East Freeway, Houston, Texas. Two other B*EAST members were shot and suffered non-fatal gunshot wounds. A witness told law enforcement that a vehicle approached the victims and individuals inside the vehicle fired

multiple shots at the victims. The witness identified one of the individuals in the vehicle as Bandido member David Vargas. **A Houston Police Department officer later obtained a cell site record warrant for a telephone number associated with David Vargas, and the records indicated the device with that number made a communication in the area of the shooting less than approximately one our prior to the shooting.**

Subsequently, a cell site location analysis for the location of the telephone number associated with Vargas was prepared by Houston Police Department Detective Charles Starks, a member of Criminal Intelligence Division. Detective Starks prepared a draft map summarizing his opinions and conclusions related to the location of the telephone number associated with Vargas prior to and at the time of the murder of M.Z. This draft location map was disclosed on discovery to all defendants, including Vargas, on February 27, 2025. Detective Starks prepared a detailed, final version that includes location data for a co-defendant. The final version was disclosed to Vargas on August 31, 2026. The final report contains the same mapping data showing a device associated with Vargas was used in the area of the shooting less than one hour beforehand.

*A. Government's Expert Notice*

Approximately one year and five months after the initial disclosure, on August 17, 2026, the Government filed its Rule 16(a)(1)(G) Expert Notice, summarizing Detective Starks's anticipated expert testimony as follows:

> Detective Starks is expected to explain the operation of cellular networks and how cellular devices communicate with cell sites; the nature and meaning of carrier-generated call-detail records and cell-site location information; and the methodology used to interpret and map those records. Based upon his review and analysis of the records associated with phone numbers utilized by defendants and suspects in this investigation, Detective Starks is expected to testify regarding the cell sites and sectors used by their devices during relevant communications and to identify and illustrate those sites on maps. **Detective Starks may further offer opinions concerning the general geographic area or areas in which the device was consistent with being located at relevant times, including the devices'**

> **movements or changes in location reflected by the sequence of cell-site connections.**

ECF No. 435 at 5 (emphasis added).

The Notice also included the basis for Detective Starks's opinions, as well as summary of his qualifications. The Government further noted that "[t]he reports and data underlying Detective Starks's opinions have been disclosed in discovery and final reports are forthcoming ."

*B. Vargas' Expert Notice*

On August 26, 2026, Vargas filed a Notice of Expert identifying Eric Devlin as a proposed expert for the defense. (ECF No. 454).

The Notice included the following generalized description of the expert's purported opinions:

> Eric Devlin is expected to explain the operation of cellular networks and how cellular devices communicate with cell sites; the nature and meaning of carrier-generated call-detail records and cell-site location information; and the methodology used to interpret and map records from a variety of sources including electronic devices and carrier-based records. He is expected to testify regarding records associated with phone numbers obtained during the investigation of this case and provided in discovery. Eric Devlin is expected to testify regarding the cell sites and sectors associated with devices and numbers during relevant communications, and to provide a visual representation of these locations, directions, and types of communication. **Devlin is also expected to testify regarding information extracted from smart phone devices using forensic methods based on materials obtained during discovery**. **He may further offer opinions concerning the general geographic area or areas including the device movements or changes in location reflected by the sequence of cell-site connections.**

ECF No. 454 at 2 (emphasis added).

Vargas did not attach an expert report to its Notice, nor has the Government, as of today, received any information regarding the conclusions reached by Vargas's expert in reciprocal discovery.

As a result, the Government cannot determine the substance of the proposed expert's opinions and is therefore unable to prepare an informed *Daubert* challenge under Federal Rule of

Evidence 702, as it cannot assess whether the defense expert's testimony is necessary or reliable. *United States v. Herman*, 997 F.3d 251, 269 (5th Cir. 2021) (reaffirming that district courts serve as evidentiary gatekeepers under Rules 702 and 403 and may exclude expert testimony that is irrelevant or likely to confuse the jury).

ANALYSIS

In *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993), the Supreme Court, in addressing the admissibility of "scientific expert evidence," held that trial judges must act as "gatekeepers" to undertake a "preliminary assessment of whether the reasoning or methodology underlying the [expert] testimony is scientifically valid." *Daubert*, 509 U.S. at 579.

Prior to 2022, in part to assist the court in exercising this gatekeeping function, Federal Rule of Criminal Procedure 16 required parties to disclose in advance a summary of the opinions they propose to offer through experts, and also the "bases and reasons" for those opinions. *See* Rule 16(a)(1)(G); (b)(1)(C) (prior to 2022 version). As the Supreme Court has noted, the expert disclosure also assists the adversary process by allowing each party "a fair opportunity to assemble and submit evidence to contradict or explain the opponent's case." *Taylor v. Illinois*, 484 U.S. 400, 410 11 (1988). Notwithstanding, providing just a "brief summary" of the expert's opinion, however, "proved to be woefully inadequate." *United States v. Mrabet*, 703 F. Supp. 3d 442, 444 (S.D.N.Y. 2023) (internal quotations omitted). "Since an expert witness, by definition, offers opinions outside the everyday knowledge of judges and juries, detailed specificity is required as to bases for those opinions before a court can adequately assess their admissibility or a defendant can contest their weight and meaning before a judge or jury." *Id.*

Consequently, in 2022, Rule 16 was amended to require, from both the Government and the defense, upon request by the opposing party, the following: "a complete statement of all

opinions that the witness will offer"; "the bases and reasons for those opinions"; "the witness's qualifications, including publications authored in the past ten years"; and "a list of other cases in which, during the previous four years, the witness has testified as an expert." *See* Rule 16(a)(1)(G), (b)(1)(C).

Furthermore, the witness "must approve and sign the disclosure," unless the party could not obtain the witnesses' signature or has previously provided a signed report with all the opinions and bases for the opinion of the witness. The signature or expert report requirement prevents the party from serving a lawyer-drafted placeholder the expert has never adopted, and it provides the other party a document that could be used for impeachment purposes at trial if the expert departs from the disclosure.

Here, the Government complied with disclosure of its expert report on February 27, 2025, and provided a final version prepared by Detective Starks and bearing his name on August 31, 2026.

Even under the pre-2022 "summary" standard, circuits held that a notice listing only "subjects," without opinions or bases, is facially deficient. *United States v. Duvall*, 272 F.3d 825, 828 (7th Circ. 2001) (disclosure of a list of topics without opinion on them was insufficient); *United States v. Hoffecker*, 530 F.3d 137, 186 (3d Cir. 2008) (the court found that defendant's notices were facially deficient, stating that "[c]onspicuously omitted from their notices ... are the opinions and basis and reasons for the opinions of [the] three proposed experts. Merely the subjects of what they may discuss is offered); *United States v. Cuellar*, 478 F.3d 282, 293 (5th Cir. 2007) (disclosure that an agent would testify about drug and money smuggling operations and methods was insufficient because it failed to explain the basis for that opinion and failed to specify agent's qualifications), *rev'd on other grounds*, 553 U.S. 550 (2008); *United States v. Tunkara,* 385 F.

Supp. 2d 1119, 1121 (D. Kan. 2005) (finding the government's notice sufficient only after it was amended to narrow and clarify the proposed expert testimony).

As detailed above, as a result of the 2022 amendments, Rule 16 now requires a "complete statement" of the experts' opinion. Cases decided after the 2022 amendments have reiterated that disclosures offering only topic areas, without the expert's actual opinion, are insufficient. *See Mrabet*, 703 F. Supp. 3d at 444 (a "broad statement that [the witness] will testify, 'based on his training and experience,' regarding seven broadly and briefly described categories, such as 'the means and methods used to produce, store, transport, and distribute wholesale quantities of methamphetamine and fentanyl in the New York City area'" is not enough (quoting id., 703 F. Supp. 3d at app., I)); *United States v. Kwok*, No. 23 CR 118, 2024 WL 1773143, slip op. at 2 (S.D.N.Y. Apr. 24, 2024) (rejecting notice that "merely identifies the general topics about which the expert will testify, rather than the expert's actual opinions—a level of detail insufficient even before the recent amendment to Rule 16" (cleaned up)); *United States v. Perez-Espinoza*, No. 2:21-CR-361, 2024 WL 3487981, slip op. at 5–6 (D. Utah July 19, 2024) (disclosure insufficient when it "merely identifies the topics [the expert] will testify about" and further fails to specify "the bases and reasons" for the opinions); *United States v. Morgan*, 143 F.4th 1264, 1281 (11th Cir. 2025), cert. denied, No. 25-6520, 2026 WL 1640898 (U.S. June 8, 2026) (government's notice was found to be sufficient after it was amended to provide detailed description of the expert's opinion).

In the present case, Vargas has provided only a cursory summary of the expert's anticipated testimony and has failed to provide the Government with sufficient notice of the specific opinions the expert intends to present.

For example, Vargas' Notice states that the expert: "may further offer opinions concerning the general geographic area or areas including the device movements or changes in location

reflected by the sequence of cell-site connections." However, as of today, the Government has not received any specific information regarding the defense expert's opinion about the location of Vargas's cellular phone before or at the time of the murder of M.Z. This is plainly insufficient. Rule 16 does not permit the Government, the jury, or the Court to wait until trial to learn what the defense expert's opinion on this issue will be.

Furthermore, because the defense expert is touted to explain "the general geographic area or areas including" Vargas' cellular phone "movements or changes in location reflected by the sequence of cell-site connections," one might assume that many of his conclusions would be memorialized in a forensic report. But as of today, Vargas has not disclosed anything about that analysis or examination.

If the expert conducted a particular analysis to support his conclusions, this information should have been disclosed to the Government. Information about what facts an opinion is based upon is crucial to the Court's gatekeeping function. Experts may not offer conjecture or speculation unsupported by the facts; instead, expert testimony must be "based upon sufficient facts or data," and the expert must apply his principles and methods "reliably to the facts of the case." Fed. R. Evid. 702(1) & (3) (emphasis added); *Daubert*, 509 U.S. at 590 (1993) ("[T]he word 'knowledge' connotes more than subjective belief or unsupported speculation.'"). Experts also cannot conceal naked conjecture or guesses behind a few unrelated facts: "nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997). Without any information concerning the examinations that may have been

conducted, there is no basis to support any of the conclusions. While the defense may be impressed with Devlin's resume, the defense disclosure is clearly insufficient.

To allow such testimony would unfairly prejudice the Government, because the Government will not have had adequate time or information to prepare an effective cross-examination. *See United States v. Hoffecker*, 530 F.3d 137, 185 (3d Cir. 2008) ("[I]t seems as important for the government to study the opinions of the experts to be called by the defendant in order to prepare for trial as it does for the defendant to study those of the government's witnesses.") (citations omitted)

A failure to comply with Rule 16 may result in an order of compliance; a continuance of trial; or the exclusion of the proffered evidence. *United States v. Sarcinelli*, 667 F.2d 5, 7 (5th Cir. 1982). *See* Fed. R. Crim. P. 16(d). Courts have affirmed the exclusion of expert testimony based upon the failure to satisfy the Rule 16 requirements. *United States v. Hoffecker*, 530 F.3d 137 (3d Cir. 2008) (defendant was not deprived of his right to present relevant evidence by district court's exclusion of three defense expert witnesses); *United States v. Yu,* 411 F. App'x 559, 567 (4th Cir. 2010)(unpublished) (excluding defense expert testimony due to failure to comply with Rule 16 disclosure obligations). In *Yu*, the defense attempted to "sandbag" the Government with computer forensic expert testimony after failing to disclose the witness or provide any discovery or report, because the defense purported that the expert was a fact-lay witness. We are concerned about a similar attack here. If Vargas cannot or will not provide the required disclosure of the expert's opinions, exclusion of the expert's testimony is an appropriate sanction to effectuate the purposes of Rule 16.

CONCLUSION

Therefore, and for all of these reasons, it is the Government's position that the proffered exert testimony should be excluded at trial for incompliance with the provisions of Fed. R. Crim. P. 16(d)(2)(C), and established precedent.

In Houston, Texas, this 9th day of September 2026.

Respectfully submitted,

AARON REITZ
United States Attorney

By: ***/s/ Kelly Zenón-Matos***
Kelly Zenón-Matos
Assistant United States Attorney
United States Attorney's Office
Southern District of Texas
Texas Bar No. 3848388
1000 Louisiana St., Suite 2300
Houston, TX 77002
Phone: 713-567-9000
Email: kelly.zenon@usdoj.gov

By: ***/s/ Byron H. Black***
Byron H. Black
Assistant United States Attorney
SDTX Fed. No. 3874745
1000 Louisiana Street, Suite 2300
Houston, Texas 77002
Telephone: (713) 567-9432
Email: Byron.Black@usdoj.gov

By: ***/s/ Molly K. Smith***
Molly K. Smith
Trial Attorney
Violent Crime and Racketeering Section
Criminal Division, Department of Justice
1301 New York Avenue NW, Washington DC 20530
cell: (202) 531-8701
Email: molly.smith@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing motion was delivered to counsels for the defendants as listed via e-filing on September 9, 2026

By: ***/s/ Kelly Zenón-Matos***
Kelly Zenón-Matos
Assistant United States Attorney